UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

HTR RESTAURANTS, INC. D/B/A
SIEBS PUB, INDIVIDUALLY AND ON
BEHALF OF A CLASS OF SIMILARLY
SITUATED PERSONS,

    Plaintiff,

v.

Case No. 2:20-CV-819

ERIE INSURANCE EXCHANGE,

    Defendant.

## NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that Defendant, Erie Insurance Exchange ("Erie"), through undersigned counsel and pursuant to 28 U.S.C. §§ 1441 and 1446, and under the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (codified in pertinent part at 28 U.S.C. §§ 1332(d), 1446, and 1453) ("CAFA"), hereby removes to this Court the lawsuit styled *HTR Restaurants, Inc. d/b/a Siebs Pub v. Erie Insurance Exchange*, Civil Div. No. GD-20-5138, filed in the Court of Common Pleas of Allegheny County, Pennsylvania. In support of this Notice of Removal, Erie states as follows:

## I.    INTRODUCTION

1. On April 17, 2020, Plaintiff filed this action on behalf of itself and a putative class. *See* Complaint, attached as Exhibit 1 to this Notice of Removal. According to the Complaint, Plaintiff and members of the putative class include persons who made or will make business interruption coverage claims to Defendant Erie arising from the COVID-19 pandemic. Plaintiff asserts that the Executive Orders issued by the Governor of Pennsylvania triggered the

business interruption coverage in its insurance policy because Plaintiff allegedly was compelled to shutter its restaurant to protect the health and safety of others from the threat of COVID-19. Plaintiff filed this suit on behalf of itself and a putative class seeking declaratory and injunctive relief.

2. As set forth below, this case is removeable to this Court under CAFA, as there is minimal diversity, more than 100 class members, and the amount in controversy exceeds $5,000,000.

## II. THE PARTIES

3. Plaintiff HTR Restaurants, Inc. d/b/a Siebs Pub ("Siebs") alleges that it is a Pennsylvania Corporation with its principal place of business located in Pittsburgh, Pennsylvania. Compl. ¶ 1.

4. The Complaint alleges that Defendant Erie, a reciprocal insurance exchange, is a citizen of Pennsylvania with its principal place of business in Erie, Pennsylvania. *Id*. ¶ 25.

## III. PLAINTIFF'S ALLEGATIONS

5. The Complaint alleges that Erie issued commercial property insurance policies to Plaintiff and other members of the putative class.[1]  *Id.* ¶ 6. Plaintiff contends that the Governor of Pennsylvania issued a series of Executive Orders that caused a disruption to its business. *Id.* ¶¶ 18-23.

6. The Complaint alleges that as a result of the enforcement of the Executive Orders, Plaintiff and other putative class members have suffered (and will continue to suffer) substantial

---

[1] The facts set forth herein derive from Plaintiff's Complaint. Erie does not admit the facts alleged in the Complaint, expressly denies liability to Plaintiff and the putative class, expressly denies that certification of any class is appropriate or permitted under the applicable rules, and reserves its rights to challenge the legal sufficiency of the Complaint.

business income losses and extra expenses as defined by Erie's various commercial property insurance policies. *Id.* ¶ 29.

7. Plaintiff asserts that it submitted claims for coverage of its business interruption and extra expense losses. *Id.* ¶ 30. The Complaint alleges that Erie denied the claims. *Id.* ¶ 33.

## IV.   THE COMPLAINT

8. Based upon these allegations, Plaintiff asserts the following claims against Erie:

- Count I seeks a declaratory judgment declaring that Plaintiff's losses and those of the putative class are covered by its insurance policies. Complaint p. 12, Count I Wherefore Clause ("Count I WC").

- Count II seeks an injunction enjoining Erie from denying coverage to Plaintiff and everyone else having an Erie policy. Complaint p. 13, Count II Wherefore Clause ("Count II WC").

## V.   THE REMOVAL REQUEST IS TIMELY

9. This Notice of Removal is timely under 28 U.S.C. § 1446(b). The Complaint was filed on April 17, 2020 and served on May 5, 2020. Because removal is made within thirty days of service, this Notice of Removal is timely. *See* Notice of Service attached as Exhibit 2 to this Notice of Removal; and all other documents filed of Record in the Court of Common Pleas of Allegheny County Pennsylvania, attached as Exhibit 3 to this Notice of Removal.

## VI.   THE COMPLAINT SATISFIES ALL OF THE ELEMENTS FOR REMOVAL UNDER CAFA

10. CAFA was enacted to expand federal jurisdiction over class actions. *See Walsh v. Defs., Inc.*, 894 F.3d 583, 586 (3d Cir. 2018) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595, (2013); *see also Kaufman v. Allstate New Jersey Ins. Co.*, 561 F.3d 144, 148-49 (3d Cir. 2009) (CAFA was intended to broaden federal court jurisdiction over class actions). Removal is proper under CAFA where, as here, a purported class action is filed in which: (a) there are 100 or more purported class members, (b) there is minimal diversity of citizenship, and

(c) the aggregate amount in controversy for the entire proposed class exceeds $5,000,000, exclusive of costs and interests. *See* 28 U.S.C. § 1332(d)(2); *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (internal citations omitted). This action meets all the criteria for removal under CAFA.

### A. The Putative Class Contains One Hundred or More Members.

11. This case purports to be a "class action" within the meaning of CAFA because it was brought under a state statute or rule, namely, 231 Pa. Code Part I, Ch 1700, Rule 1701 *et seq.*, which authorizes an action to be brought by one or more representative persons as a class action if the underlying requirements are met. *See* 28 U.S.C. § 1332(d)(1)(A)-(B); Compl. ¶¶ 36-63. Plaintiff contends that "the members of the class are so numerous that joinder of them is impracticable." Compl. ¶ 41.

12. Plaintiff purports to "bring[ ] this action individually and on behalf of a class of similarly situated persons." Compl. ¶ 36. *See also*, Compl. ¶ 4. While the class is, at times (but not always), defined to consist only of Pennsylvania citizens (*e.g.,* Compl. ¶¶ 38, 40), Plaintiff seeks entry of an injunction that would cover all Erie policyholders everywhere. *See* Count II WC at (b).

13. There is no question that the putative class contains more than 100 members. Erie has issued 66,671 policies with business interruption coverage in Pennsylvania, and 214,984 such policies throughout the United States. *See* Declaration of Scott Morgason ("Morgason Dec.") ¶ 5 attached as Exhibit 4 to this Notice of Removal. It has, to date, received at least 1,773 COVID-19 related business interruption claims in Pennsylvania, and at least 4,279 throughout the United States. *See* Morgason Dec. ¶ 5. Whether the class is limited to Pennsylvania citizens

or, as pleaded in Count II, covers all Erie policyholders everywhere, there are more than 100 members in the putative class.

### B. The Putative Class Satisfies Minimal Diversity

14. CAFA requires only "minimal diversity," meaning that "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A).

15. Erie is a citizen of Pennsylvania, so if any member of the class is not a Pennsylvania citizen, there is minimal diversity and hence jurisdiction before this Court under CAFA.

16. Plaintiff purports to "bring[ ] this action individually and on behalf of a class of similarly situated persons." Compl. ¶ 36. *See also*, Compl. ¶ 4 ("on behalf of a class of similarly situated persons"). The class is at times defined to consist only of Pennsylvania citizens. *See* Compl. ¶¶ 38, 40).

17. In Count I (Declaratory Judgment), Plaintiff seeks relief "declaring that *each member of the class* is entitled to coverage." Count I WC at (b) (emphasis added). *See also* Compl. at ¶ 76 ("*Each member of the class* is entitled to a declaration …") (emphasis added). If the class is interpreted not to include policyholders outside of Pennsylvania, then with respect to Count I there would be no diversity between Erie and the putative class.

18. In Count II (Injunctive Relief), however, Plaintiff expressly does *not* limit the scope of the injunction to any particular class or subclass of Pennsylvania citizens. Instead, in Count II Plaintiff does not rely on its class definition and instead more broadly demands that Erie "must be enjoined from continuing to deny and/or refuse to acknowledge coverage *to insureds* for losses…." Compl. ¶ 87 (emphasis added). Plaintiff broadly seeks in Count II an injunction

"enjoining Defendant … from denying or refusing to acknowledge coverage for losses…." Count II WC at (b).

19.   On the face of Plaintiff's Complaint, therefore, the relief sought in Count II—unlike the relief sought in Count I—is *not* limited to any particular class, but rather seeks to preclude Erie from denying coverage to all "insureds" everywhere.  Compl. ¶ 87, Count II WC at (b). While Plaintiff sought to limit its declaratory judgment claim to "each member of the class," Count II contains *no such limitation* and more broadly seeks an injunction not *in favor of* class members (however defined), but *against* Erie enjoining it from denying coverage to all of its "insureds."  *Id*. ¶ 87.  Erie has many insureds outside of Pennsylvania, and hence there is minimal diversity.  Morgason Dec., ¶ 5.

20.   Significantly, the Court ought to consider the citizenship, for minimal diversity purposes, of those who would benefit from the injunction prayed for in the Complaint regardless of whether such persons are included within the Plaintiff's pleaded class definition (especially where, as here, the injunctive relief is untethered to the class definition).  *See Schwartz v. SCI Funeral Services of Florida, Inc.*, 931 F. Supp. 2d 1191 (S.D. Fla. 2013).  In *Schwartz*, for example, plaintiff filed a putative class action alleging Florida law claims seeking injunctive relief on behalf of a class of "Florida citizens" only.  *Schwartz*, 931 F. Supp. 2d at 1192, 1196. Defendant, a Florida citizen, removed the action under CAFA, and the plaintiff sought to remand the case back to state court on the basis that there was no minimal diversity under CAFA. The court denied the motion to remand, holding that there was minimal diversity under CAFA even though the class was limited to citizens of Florida and the defendant was also a citizen of Florida.

21.   The court reached that result because while plaintiff sought to eliminate jurisdiction under CAFA by ostensibly pleading a class definition to consist solely of Florida

citizens, the injunctive relief sought by plaintiff would, in fact, apply to Florida and non-Florida citizens alike.  Hence, the Court held, the *real* members of the class were not limited to Florida citizens, regardless of how plaintiff purported to define the class.  "Plaintiffs implicate in the claims for injunctive relief a class of real parties in interest that are not Florida citizens … Plaintiffs ask the Court to enter an injunction 'enjoining the unlawful acts, practices and omissions set forth herein,' irrespective of whether the purported victims of such conduct are Florida citizens."  *Id*. at 1197.  As further explained by the Court:

> When a suit is brought on behalf of real parties in interest, they are treated as class plaintiffs for purpose of CAFA jurisdiction even if they are not named parties or alleged members of a Rule 23 class.  'Courts routinely look beyond labels to determine whether a lawsuit is a 'class action' or 'mass action' under the Class Action Fairness Act.' … Accordingly, that the out-of-state real parties in interest are not included in the class definition here has no bearing on whether any comprise a "class" for purposes of finding CAFA jurisdiction over this lawsuit.

*Id*. at 1197-98 (citations omitted).

22.     Here, as in *Schwartz*, to avoid CAFA jurisdiction Plaintiff pleaded its declaratory judgment claim on behalf of a class of only nondiverse class members but, also as in *Schwartz*, sought injunctive relief on behalf of diverse citizens that created federal jurisdiction under CAFA.  As in *Schwartz*, this Court should count the citizenship of all persons who would benefit from the injunction—all of Erie's "insureds"—to determine whether there is minimal diversity.

23.     Significantly, the case for including the citizenship of non-Pennsylvania citizens here is even *stronger* than it was in *Schwartz* for including the citizenship of non-Florida citizens.  In *Schwartz*, the injunction was expressly sought only on behalf of Florida citizens; the Court read between the lines to determine that the actual scope of any injunction would extend beyond Florida citizens.  No reading between the lines is necessary here.  In seeking *declaratory* relief, Plaintiff was clear that it was seeking relief "declaring that *each member of the class*

[defined at times in the Complaint as citizens only of Pennsylvania] is entitled to coverage." Count I WC at (b) (emphasis added). But in seeking *injunctive* relief, in stark contrast, Plaintiff purposefully eschewed the "each member of the class" limitation and instead pleaded for far broader relief: an "Order … enjoining Defendant … from denying or refusing to acknowledge coverage for losses." Count II WC at (b). That is, while Count I may be limited to defined class members (however the class is defined), Count II is not; instead, the injunction sought by Plaintiff in Count II would—on its face—apply to all Erie "insureds" everywhere.

24. Indeed, had Plaintiff intended to limit Count II—the injunctive relief claim—to expressly defined class members, it would have used in the Count II WC the same "each member of the class" limitation it pleaded in the Count I WC. Plaintiff did not do so, however, thus laying bare that it is seeking exactly what is pleaded in Count II, namely, an injunction that will enjoin Erie from denying coverage to all Erie "insureds" everywhere. That includes numerous "insureds" that are citizens of states other than Pennsylvania. Morgason Dec. ¶ 5.

25. Because there are members of the actual class upon whose behalf an injunction is sought that are diverse from Erie, the minimal diversity requirement under CAFA has been satisfied and this case is removeable to this Court.

### C. The Amount in Controversy Greatly Exceeds $5 Million

26. Erie disputes that Plaintiff has stated any viable claims and also disputes that Plaintiff and the putative class members are entitled to any relief. Nevertheless, the allegations of the Complaint and the nature of Plaintiff's claims make clear that the amount in controversy exceeds CAFA's jurisdictional threshold of $5,000,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(d)(2) and (6).

27.     CAFA provides that "the claims of the individual class members shall be aggregated to determine whether the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs."  28 U.S.C. § 1332(d)(6).  Where, as here, "the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so."  *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 83 (2014).  To establish the amount in controversy sufficient to remove a class action case to federal court, a defendant need not submit proof to establish the amount in dispute, but rather "may simply allege or assert that the jurisdictional threshold has been met."  *Id.* at 89 (citation omitted).  The jurisdictional threshold has been met.

28.     CAFA's amount in controversy requirement is satisfied where the defendant's notice of removal includes a plausible allegation that the stakes exceed $5,000,000.  *See Winkworth v. Spectrum Brands, Inc.,* Civil Action No. 19-1011, 2019 U.S. Dist. LEXIS 181448, at *4 (W.D. Pa. Oct. 21, 2019) (quoting *Dart Cherokee Basin Operating Co.*, 574 U.S. at 89).  When removing a suit, the defendant may present an estimate of the amount in controversy based on a "reasonable reading of the value of the rights being litigated."  *Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 507 (3d Cir. 2014) (internal citation omitted).

29.     The amount in controversy is satisfied on the *possible* recovery if Plaintiff and the class were to win on all of its claims; whether they are likely to recover anything based on the merits of the case is irrelevant to the amount in controversy analysis.  *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995) (noting that indeterminacy of the amount to be recovered does not defeat diversity jurisdiction, and it is immaterial what the plaintiff might eventually recover); *Clean Air Council v. Dragon Int'l Grp.*, No. 1:CV-06-0430, 2006 U.S. Dist. LEXIS 52292, at *11 (M.D. Pa. July 28, 2006) (citing *Meritcare Inc. v. St. Paul Mercury Ins.*

*Co.,* 166 F.3d 214, 217 (3d Cir. 1999), *overruled on other grounds by Exxon Mobil Corp. v. Allapattah Servs.,* 545 U.S. 546 (2005) ("[O]nly if it appears to a legal certainty that Plaintiff cannot recover the minimum [jurisdictional] amount should [the court] remand." *See also*, *Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 579 (7th Cir. 2017) (citing *Blomberg*, 639 F.3d at 763). ("The party seeking removal does not need to establish what damages the plaintiff will recover, but only how much is in controversy between the parties.").

30.Because Plaintiff and the putative class do not seek monetary damages directly, the Court must consider the amount in controversy presented by Plaintiff's claims for declaratory and injunctive relief. The Third Circuit measures the amount in controversy in declaratory and injunctive actions by reference to "the value of the rights which the plaintiff seeks to protect." *Columbia Gas Transmission Corp. v. Tarbuck*, 62 F.3d 538, 539 (3d Cir. 1995). *See also*, *Cty. of Wash. v. United States Bank Nat'l Ass'n,*, Civil Action No. 11-1405, 2012 U.S. Dist. LEXIS 125748, at *54 (W.D. Pa. Aug. 17, 2012) (internal citation omitted) ("With regard to actions seeking declaratory relief, the amount in controversy is the value of the right or the viability of the legal claim to be declared, such as a right to indemnification....").

31.Significantly, where the declaratory judgment and injunctive relief pertains to the existence or extent of insurance coverage, courts look to the *face value* of the subject insurance policies to determine whether the amount in controversy is satisfied. *See Sallada v. Nationwide Mut. Ins. Co.*, Civil No. 1:CV-99-0381, 1999 U.S. Dist. LEXIS 21670, at *5 (M.D. Pa. June 2, 1999) (internal citation omitted) ("Where plaintiffs seek equitable relief pertaining to the enforcement of insurance policies, *the face value of the policy is the measure of the amount in controversy*.") (emphasis added). *See also*, *Jumara v. State Farm Insurance Co.*, 55 F.3d at 877 (evaluating insurance policy limits in determining amount in controversy); *Manze v. State Farm*

*Insurance Co.*, 817 F.2d 1062 (3d Cir. 1987) (same); *Nationwide Mut. Ins. Co. v. Brown*, 387 F. Supp. 2d 497, 500 (W.D. Pa. November 16, 2004) (concluding amount in controversy was satisfied where insurer's potential liability, in light of policy limits, exceeded jurisdictional threshold).

33. There is no question that the amount in controversy in this case exceeds $5 million. Plaintiff's own policy provides potentially uncapped coverage for covered losses caused by the interruption of its business over a lengthy period of time. Plaintiff claims that its situation is typical of those of members of the putative class. *See* Compl. ¶ 49.

33. Significantly, Erie issued 214,984 commercial policies throughout the country with business interruption coverage and 66,671 such policies in Pennsylvania. Morgason Dec. ¶ 5. Should Plaintiff succeed in obtaining the declaratory or injunctive relief it seeks, policyholders could potentially receive business interruption coverage not provided for by the terms and conditions of the policies—not only with respect to the COVID-19 pandemic, but with respect to potential future pandemics. Such a declaration would fundamentally enlarge the scope of Erie's policies from providing coverage where physical damage causes business interruption, to policies that provide coverage in the absence of any physical damage but where a civil authority enters an order to enforce social distancing or to achieve some other supposed societal benefit. The amount in controversy requirement is easily met on these facts.

34. Moreover, to date, 4,279 claims have been made by Erie's policyholders seeking business interruption coverage related to the COVID-19 pandemic. *See* Morgason Dec. ¶ 5. Plainly, many more claims will be made. Plaintiff seeks an injunction enjoining Erie from denying coverage to any of those 4,279 policyholders and any of the other 214,984 policyholders who may file COVID-19 related business interruption claims.

35. Plaintiff provides no calculation of its own alleged damages or those of putative class members, but Erie reasonably anticipates that class members will, on average, each seek tens of thousands of dollars in damages, and hence, even assuming—most improbably—that only 4,279 of Erie's policyholders file claims, the amount in controversy greatly exceeds $5 million.

36. According to Erie's records, during 2018 and 2019 Erie paid over 1,450 business interruption claims at an average of more than $11,900 per claim. *See* Morgason Dec. ¶ 6. This figure is a conservative estimate of the damages each alleged member of the putative classes here may seek, as Plaintiff claims that its business and those of members of the putative classes were interrupted for lengthy periods of time. *See id.*

37. But, just taking the average of approximately $11,900 paid for each business interruption claim over the last two years and multiplying that by the 4,279 policyholders who have already filed claims, yields potential claims payouts in this case of $50,920,100 to those 4,279 policyholders. *See id.* ¶ 8.

38. This is a conservative estimate of the number of putative class members and the amount in dispute in this case. The estimated $50,920,100 at issue as articulated above does not take into account that (a) the number of putative class members likely will increase by at least several fold as more policyholders file claims for uncovered alleged losses; (b) the likely amount sought by each policyholder will be substantially in excess of $11,900 and likely will be multiples of that amount given the length of time encompassed by the Executive Orders; (c) case law holds that *the face amounts of the policies*, and not potential payouts, form the basis of the calculation; and (d) the requested injunctive and declaratory relief would result in the widespread enlargement of Erie's coverage obligations now and for years to come.

## VII. ERIE HAS COMPLIED WITH ALL REMOVAL PROCEDURES

39. In accordance with 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon all counsel of record, along with a copy of the Notice of Removal to the Clerk of the Court for the Court of Common Pleas of Allegheny County.

40. In accordance with 28 U.S.C. § 1446(a), a true copy of all state court process, pleadings and orders served on Erie are attached to this Notice of Removal.

## VIII. NON-WAIVER OF DEFENSES

41. By filing this Notice of Removal, Erie does not waive any defenses available to it.

42. By filing this Notice of Removal, Erie does not admit any of the allegations in Plaintiff's Complaint. Erie expressly reserves the right to contest those allegations at the appropriate time.

**WHEREFORE**, Defendant Erie Insurance Exchange removes the above-captioned action from the Court of Common Pleas, Allegheny County, and requests that further proceedings be conducted in this Court as provided by law.

Dated: June 3rd, 2020

Respectfully submitted,

DiBELLA, GEER, McALLISTER & BEST, P.C.

By: /s/ Paul K. Geer
Paul K. Geer
Pa. I.D. No. 27675

By: /s/ Tara L. Maczuzak
Tara L. Maczuzak
Pa. I.D. No. 86709

By: /s/ Jason H. Peck
Jason H. Peck
Pa. I.D. No. 308111

        DiBella Geer McAllister Best, PC
        20 Stanwix Street
        11th Floor
        Pittsburgh, PA 15222
        412.261.2900-Telephone
        412.261.3222-Facsimile

**TIMONEY KNOX, LLP**

By:    s/Matthew B. Malamud
    Matthew B. Malamud, Esquire
    Bar Id. No. PA314040
    400 Maryland Drive
    Fort Washington, PA 19304
    215-646-6000
    215-646-0379 (fax)
    mmalamud@timoneyknox.com

**ALSTON & BIRD, LLP**

    Adam J. Kaiser *(pro hac vice* forthcoming*)*
    90 Park Ave,
    New York, New York 10016
    (212) 210-9000
    adam.kaiser@alston.com

*Attorneys for Defendant Erie Insurance Exchange*